UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-20216-Civ-GAYLES/TORRES

JOSUE REQUE,

       Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of
the Social Security Administration,

       Defendant.
_____/

## REPORT AND RECOMMENDATION ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross motions for summary judgment filed by Josue Reque ("Plaintiff") [D.E. 20] and Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Defendant" or "Commissioner") [D.E. 24] on whether the Administrative Law Judge (the "ALJ") properly evaluated the evidence presented by Plaintiff in reaching her decision. Even under the limited standard of review that governs this case, the Court finds that the motions are ripe for disposition and that substantial evidence did not support the ALJ's determination.[1] For the reasons stated below, Plaintiff=s motion for summary judgment [D.E. 20] should be **GRANTED**, Defendant's motion for summary

---

[1] The case was referred to the undersigned Magistrate Judge for disposition of all non-dispositive matters and for a Report and Recommendation on dispositive motions. [D.E. 2].

judgment [D.E. 24] should be **DENIED**, and the decision of the ALJ should be **REMANDED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 7, 2018, Plaintiff applied for disability insurance benefits and supplemental social security income, alleging a disability onset date of June 1, 2012. The Commissioner denied Plaintiff's applications at the initial and reconsideration levels. Plaintiff then requested a hearing before an administrative law judge ("ALJ") that took place on May 5, 2020. After considering the record and the testimony of a vocational expert ("VE"), ALJ Lornette Reynolds issued an unfavorable decision on May 29, 2020.

At step one of the five-step sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 1, 2012. The ALJ found at step two that Plaintiff had multiple impairments, including autistic spectrum disorder, unspecified anxiety disorder, unspecified depressive disorder, unspecified impulse control disorder, and mild intellectual disorder. The ALJ then determined that his moderate limitations did not meet any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Prior to moving to step four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform medium work, except that he could not climb ladders, ropes, or scaffolds, and could not work at unprotected heights or operate dangerous machinery. The ALJ found that Plaintiff should avoid concentrated exposure to dust, odors, gases and other pulmonary irritants, but that he could apply

commonsense understanding to carry out simple tasks and instructions, deal with standardized work situations with occasional or no variables in or from these situations, and respond appropriately to supervision. The ALJ further found that Plaintiff required an occupation with only occasional co-worker and public interactions, and no fast-paced driven production quotas. Finally, the ALJ found that Plaintiff could maintain regular attendance and be punctual within customary tolerances and perform activities within a schedule.

The ALJ then proceeded to step four and determined that Plaintiff did not have any past relevant work experience. However, the ALJ determined that based on Plaintiff's age, education, and RFC, there were jobs in significant number in the national economy that he could perform; namely, harvest worker, cleaner II, and laundry laborer. The ALJ relied on the testimony of the VE in making this determination.

On November 16, 2020, the Appeals Council denied Plaintiff's request to review the ALJ's decision. Plaintiff then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g). Accordingly, this action is now ripe for disposition.

Plaintiff's motion puts forth four different theories in support of remand. Specifically, Plaintiff argues that: (1) the ALJ did not properly assess the medical opinions of Dr. Carcache, Plaintiff's treating psychiatrist; (2) the ALJ's RFC finding was not supported by substantive evidence; (3) the ALJ improperly evaluated Plaintiff's subjective complaints; and (4) the ALJ failed to meet her burden of

establishing that there is other work in the national economy that Plaintiff can perform. After careful review of each of these theories, the Court agrees with Plaintiff's first argument that the ALJ improperly assessed the medical opinions of Dr. Carcache and recommend granting remand on this basis.

## II. STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, a court is not to "reweigh the evidence" or "decide the facts anew." *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case). Instead, so long as an ALJ's findings are supported by substantial evidence, a court must defer to the ALJ's decision even if the evidence may preponderate against it. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Miles*, 84 F.3d at 1400;

4

42 U.S.C. § 405(g). However, no presumption of validity attaches to the Commissioner's conclusions of law. *See Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991). A court also reviews an ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding. *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses. *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971). It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence. *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963). Therefore, a court's responsibility is to ensure that the proper legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.   ANALYSIS

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves he or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and

"[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the claimant is disabled.

An ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, an ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If an ALJ does not make such a finding, then the inquiry ends. *See id.* at § 404.1520(c). At step three, an ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved, the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. An ALJ assesses

a claimant's RFC at this stage, based on the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See id.* at § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, an ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express the claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy.

This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform based on the claimant's RFC, work experience, education, and age. *See id.* at § 404.1520(e)-(f).

On appeal, Plaintiff asserts that the ALJ's decision must be remanded because the ALJ did not properly weigh the medical opinion of Dr. Carcache; the ALJ's RFC finding lacked substantive evidence; the ALJ improperly evaluated Plaintiff's subjective complaints; and the ALJ erred in finding that there were jobs in the national economy that Plaintiff could perform. For the reasons that follow, we find

7

that Plaintiff's first argument has merit and, as such, the Commissioner's decision should be remanded.

### A.  *<u>The ALJ's Assessment of the Medical Opinion Evidence</u>*

Plaintiff's first argument is that the ALJ failed to properly evaluate the medical opinion of Doctor Luis M. Carcache, M.D., Plaintiff's treating psychiatrist. Plaintiff, who has a significant history of medical treatment for autism and depression disorder, including multiple hospitalizations due to suicidal and aggressive behavior, began seeing Dr. Carcache in November 2017.  [D.E. 20, p. 5]. In April 2020, Dr. Carcache issued a medical opinion wherein he found that Plaintiff's had marked limitations that precluded him from working.  However, after reviewing Dr. Carcache's medical evaluations, as well as other medical reports and testimony in the record, the ALJ concluded that "the opinion of Luis Carcache, M.D. is not persuasive."  [D.E. 14, p 31].  Plaintiff takes issue with the ALJ's rationale for discounting the opinion of his psychiatrist.  Specifically, Plaintiff alleges that the "[t]he ALJ's findings are based on material misstatements of the evidence of record[, and] [a]s such, they cannot be based on substantial evidence." [D.E. 20, p. 13].

As an initial matter, Plaintiff does not contest that her claim is governed by the new rules for evaluating medical opinions in social security cases.  The new regulations apply to claims filed on or after March 27, 2017, and provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a).  All medical opinions are instead evaluated according to the factors listed in § 404.1520c(c), of

8

which the most important are the supportability and consistency of the medical opinion. And the Commissioner is not required to articulate how it "considered each medical opinion or prior administrative medical finding from one medical source individually." § 404.1520c(b)(1).

Supportability refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her" opinion. § 404.1520c(c)(1). Consistency looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinion presented. § 404.1520c(c)(2). The other factors, which the ALJ is not required to detail, concern the medical source's relationship with the claimant, the medical source's specialization, and any "other factors that tend to support or contradict a medical opinion." *See* §§ 404.1520c(c)(2)-(5); *see also Mudge v. Saul*, 2019 WL 3412616, *4 (E.D. Mo. July 29, 2019) ("Other than articulating his consideration of the supportability and consistency factors, the Commissioner is not required to discuss or explain how he considered any other factor in determining persuasiveness.") (citing 20 C.F.R. § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we considered medical opinions and prior administrative medical findings in [a claimant's] case record.")).

Thus, under the revised regulations, the ALJ must articulate how persuasive he or she finds all the medical opinions in the record, and *specifically articulating* how it considered the supportability and consistency factors for a medical source's

9

opinion. *See* 20 C.F.R. § 404.1520c(b); *see also Bonilla v. Saul*, No. 19-25323-CIV, 2020 WL 9048787, at *4, n.5 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, No. 19-CV-25323, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021) ("The new regulations are, in some respects, consistent with prior Eleventh Circuit decisions because an ALJ could always "reject any medical opinion if the evidence supports a contrary finding.") (citing *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007)).

Here, contrary to the Commissioner's suggestion, Plaintiff does not allege that the opinion of Dr. Carcache was entitled to controlling weight; rather, he asserts that the ALJ's finding of Dr. Carcache's opinion as unpersuasive was not supported by substantive evidence because the ALJ's conclusion was premised on material misstatements of the evidence of record. [D.E. 20, p. 12]. Based on our review of the relevant evidence, we agree with Plaintiff.

On April 15, 2020, Dr. Carcache, whom Plaintiff had been seeing for treatment since November 2017, completed an assessment of Plaintiff's mental and behavioral limitations. *See* [D.E. 14, pp. 686-88]. Dr. Carcache's report diagnosed Plaintiff with autism, anxiety disorder, depressive disorder, impulse control disorder, and mild intellectual disability. *Id.* Furthermore, in Dr. Carcache's opinion, these conditions "impaired [Plaintiff's] social skills," caused "poor or deficient impulse control," "illogical thinking," and "emotional withdrawal and/or isolation," resulting in "moderate to severe interference with employment," as well as "marked restrictions in activities of daily living that likely would cause him to be confined to home."

10

[D.E. 20, p. 12; D.E. 14, pp. 686-88]. Yet, the ALJ deemed Dr. Carcache's conclusion unpersuasive on the grounds that his opinion was inconsistent with (i) record evidence indicating that Plaintiff was attending FIU college and getting As and Bs, and (ii) Dr. Carcache's own medical notes observing that Plaintiff "was doing well," that he "demined all depressive symptoms," and that he was "cooperative and engaged." [D.E. 14, p. 31].

We agree with Plaintiff that in explaining her reasons for discrediting the opinion of Dr. Carcache the ALJ materially misstated both Plaintiff's academic history and Dr. Carcache's medical records, rendering her finding of inconsistency devoid of substantive support. For starters, Plaintiff is right in highlighting that ALJ's first argument for discrediting the opinion of Dr. Carcache proceeds from the mistaken assumption that Plaintiff was a college student at Florida International University ("FIU"). *See* [D.E. 14, p. 25] (incorrectly stating that "[Plaintiff] attends college in person at [FIU][,] [where] [h]e takes two courses"). According to the ALJ, evidence that Plaintiff "was attending FIU-Dan Marino Campus, studying Business Administration, taking 2 classes and getting A's and B's," plainly contradicted the doctor's conclusion that Plaintiff's autism and emotional disorders had marked limitations in his activities of daily living. *Id.* at 31. The ALJ's reasoning on this point, however, is premised on a material misreading of the record, for Plaintiff has never been a college student at FIU; rather, the record reflects that he was a student at the Dan Marino Campus, a special institution for individuals with development disabilities. [D.E. 20, p. 13].

11

In response, the Commissioner asserts the invited error doctrine, claiming that any error arising from the misinterpretation of Plaintiff's student status was invited by Plaintiff's own testimony. [D.E. 24, pp. 5-6]. A review of the record strongly undermines this claim. As the Commissioner rightly points out, "Plaintiff referred to attending 'university' as a student for two years and indicated he attended classes in person" during his hearing. *Id.*; *see also* [D.E. 14, p. 47]. Conspicuously absent from Defendant's response, however, is the testimony from Plaintiff's mother, ten pages later, clarifying Plaintiff's answers to the ALJ and unequivocally stating that he did not attend FIU but a special school for disabled persons. [D.E. 14, p. 57] ("Q. Okay, And [Plaintiff] testified that he goes to school, is that correct? Well, not during corona, but that he goes to FIU, is that correct? A. The special – the school, Dan Marino, **not FIU**. **That's Dan Marino**. Not the regular, it's the special **for special kids with disabilities**.) (emphasis added). Indeed, the record contains ample additional evidence documenting Plaintiff's special education needs and history. *See e.g., id.* at 614 (Plaintiff "could not pass his FCAT to get a regular diploma"); *id.* at 617 ("If [Plaintiff] attends an academic program he should be considered a special student"); *id.* at 655 (indicating that Plaintiff had been attending "Miami Date College Access Program"); *id.* at 640 (reporting that Plaintiff is performing poorly and, as such, "[parents] will hold school for now"). Based on this record, we cannot agree that the ALJ's mistaken perception that "[Plaintiff] attends college in person at [FIU][,] [where] [h]e takes two courses," [D.E. 14, p. 25], was an error invited by Plaintiff. Instead, it is clear that the ALJ materially misconstrued the factual evidence on

12

record and articulated what is factually inaccurate reasoning in support of her finding of inconsistency. While we agree with the ALJ that excelling at higher education would be indicative of competent functioning in activities of daily living, here, Plaintiff's record was simply devoid of such facts.[2] Contrary to the Commissioner's claims, conclusions based on factually inaccurate statements are deemed to be flawed reasoning that cannot constitute substantive evidence. *See Jimmerson v. Comm'r of Soc. Sec.*, No. 4:20-CV-01045-JHE, 2022 WL 829494, at \*8 (N.D. Ala. Mar. 18, 2022) (remanding where the ALJ's factual errors tainted his consideration of the medical opinion evidence); *Chandler v. Soc. Sec. Admin.*, No. 5:12-CV-155, 2013 WL 2482612, at \*8 n. 3 (D. Vt. June 10, 2013) (holding that ALJ's credibility assessment was flawed because the "ALJ did not effectively hear or understand [ ] testimony at the administrative hearing and thus was unaware of the correct facts.").

Plaintiff also takes issue with the ALJ's second premise for discrediting the opinion of Dr. Carcache; namely, that his opinion is inconsistent with his own medical notes. [D.E. 14, p. 31]. Here, Plaintiff argues that in her breakdown of Dr. Carcache's medical records, the ALJ scrupulously omitted substantive portions of his medical notes that contradicted her finding of inconsistency, thereby mischaracterizing the

---

[2] Even if we were to assume that the ALJ did not mistakenly describe Plaintiff's academic record, we disagree with the Commissioner's claim that evidence of his attendance at the Dan Marino Campus should be read as inconsistent with Dr. Carcache's opinion of marked limitations in activities of daily life. As noted above, the Dan Marino Campus is a program for "special kids" with "autism and other development disabilities." [D.E. 20, p. 13 n. 4]. Nothing about Plaintiff's enrollment in this special program creates genuine inconsistencies with Dr. Carcache's opinion that Plaintiff's autism and other mental impairments result in marked limitations in activities of daily living. [D.E. 14, p. 687].

13

nature of his reports and rendering her final finding devoid of substantive evidence. Here, too, the record supports Plaintiff's position.

The ALJ's decision starts its assessment of Dr. Carcache's medical record by summarizing Exhibits 14F and 20F, a visit report by Dr. Carcache dated November 11, 2017, in the following way: "[i]n November 2017, . . . [h]is parents reported that the claimant had been having difficulties with behavior since age 14-15 (Id.). When frustrated he bit or clenched his fingernails on his forearm. (Id.). His parents further reported that they took him to church on a regular basis in which the claimant enjoyed. (Id.). They also reported that they have a Peruvian restaurant in which the claimant helped with. (Id.)." [D.E. 14, p. 28].

As Plaintiff points out, this description of the exhibit mischaracterizes its contents because it omits substantial portions of the report that truly convey the seriousness of Dr. Carcache's findings. Review of the report reveals that absent from the ALJ's description is the fact that Dr. Carcache also recorded that Plaintiff had "difficulty starting and continuing conversation. . . depression and low self esteem"; that he had a problem "with repetitive behavior of touching others"; that "when upset [he] can push parents"; that Plaintiff had "grabbed [a] knife and threatened to end [his] life after becoming upset with [his] parents"; that Plaintiff "responded with short phrases," had "poor eye contact," "a constricted affect and limited insight"; and that he "gets anxious in new situations or with others." [D.E. 20, p. 15; D.E. 14, p. 655]. A plain reading of this note makes clear that the ALJ's description omits the major thrust of the report: that in addition to just "bit[t]ing . . . his fingernails," Plaintiff

14

displayed hyperaggressive attitudes towards his parents and other, as well as serious suicidal tendencies.

The ALJ next addresses a consultation report from a follow-up visit on June 22, 2018. Here, too, the ALJ's underinclusive description of Dr. Carcache's medical records yields a false sense of benignity that is belied by the actual contents of his report. According to the ALJ, during this examination Plaintiff reported that he "was doing well, and denied moot symptoms or hallucinations. [ ]. The claimant's mother stated that the claimant was doing well on Risperidone and Sertraline and would like to restart the claimant on them. (Id.)." [D.E. 14, p. 28].

On the other hand, a closer look at the medical note reveals that Plaintiff "started having aggressive behaviors and [signs and symptoms] of anxiety" that led to his psychological admission at "Banyan earlier this month." *Id.* at 648. Moreover, the Banyan Health records describe the circumstances surrounding of Plaintiff's in-patient admission in detail. *See id.* at 543-556. Although the ALJ's decision offers a benign description of these events,[3] the actual records reflect that Plaintiff "report[ed] increased aggressive behavior (has tried to jump off a moving car and mother found him yesterday with a belt around his neck, . . . [and had] loss of appetite,

---

[3] "[Plaintiff] reported that, I feel much better, I don't hear voices and I don't want to hurt myself, I feel better. (Id.). He stated that he was feeling fine, and he was showing clinical improvement. (Id.). The claimant denied suicidal or homicidal ideation, hallucinations or delusions. (Id.). The claimant reached maximum CSU benefits. (Id.). The claimant had met criteria for discharge as manifested by absence of threatening behavior to self or others, stabilization of symptoms to a baseline level of functioning with no impact upon behavior and/or interaction with others, expression of understanding of discharge plan and willingness to adhere to outpatient treatment." [D.E. 14, p. 28] (quotation marks omitted).

15

feeling pitiful, and has suicide thoughts: 'I think of killing myself with a knife' and plan." [D.E. 20, p. 15; D.E. 14, p. 551]. The report further indicates that Plaintiff had "poor insight of severity of illness," "was actively experiencing auditory hallucinations telling 'kill yourself, you are good for nothing, you will never succeed in anything, you are not worth it," and that he "feels aggressive at times and he does not know why." *Id.* Finally, the medical note explains that Plaintiff "uses eye contact only fleetingly," has monotone speech, and "[t]hroughout the assessment patient fails to elaborate on anything without prompting." *Id.* Here, again, the ALJ mistakenly depicts a record that is replete with reports of aggressiveness and suicidal attempts as a sign of recovery and well-being.

A third example evidencing the ALJ's pattern of self-serving omissions in her assessment of the medical record is her description of the Jackson Hospital medical records from July 2018. [D.E. 14, p. 28]. The ALJ wrote: "the claimant was treated at Jackson hospital for depression and suicidal ideation. (Ex. 26F at 24). Upon discharge from treatment, the claimant denied having symptoms of depression such as hopelessness or thoughts of dying. (Id.). He was adamant that he wanted to live and said that he would like to go home. (Id.). The claimant did not exhibit symptoms of mania, psychosis or anxiety. (Id.). He appeared calm and cooperative. (Id.)." *Id.*

Absent from the ALJ's summary, however, is the fact that the report explains that Plaintiff was actually Baker Acted prior to his admission to Jackson. The Jackson records document that Plaintiff "got into a fight with his mother," that he "felt depressed and suicidal," and that "he was [Baker Acted] at Kendall hospital" and

16

"then transferred to Jackson." [D.E. 14, p. 689]. The report notes that Plaintiff had a prior suicide attempt five years ago, a "hanging attempt," that he has had depression for 4-5 years," and a history of "danger to self, depression, hospitalization, mood swings." *Id.* at 689, 696, 703. Finally, the report indicates that this was "an involuntary admission requiring 24 hour observation, nursing care, and inpatient treatment and cannot be treated in a less restrictive environment." [D.E. 20, p. 15; D.E. 14, pp.691-92].

In light of the record at hand, we agree with Plaintiff that in her assessment of Dr. Carcache's medical notes and other cited records, the ALJ's decision omitted substantial portions of those records that materially contradicted her finding of inconsistency.[4] This mischaracterization of the medical record, in conjunction with her material misstatements of fact regarding Plaintiff's student status, *see supra* at 11-13, renders the ALJ's determination that the opinion of Dr. Carcache is unpersuasive devoid of substantive support. In essence, these defects mean that both of the ALJ's reasons for discrediting the doctor's opinion are materially flawed. *See Beckford v. Berryhill*, 2017 WL 3835859, *7-9 (M.D. Fla. Aug. 16, 2017) (noting that the ALJ's numerous errors called into question the accuracy of the ALJ's decision); *Sneed v. Berryhill*, No. 3:15CV591-SRW, 2017 WL 1230849, at *5 (M.D. Ala. Mar. 31, 2017) ("An ALJ's decision is not based on substantial evidence, and

---

[4] Plaintiff cites four additional instances where the ALJ's depiction mischaracterize the nature of the record. In all of these instances the ALJ assessment appears to omit medical reports about Plaintiff's aggressive attitudes towards his parents and others, as well as Plaintiff's serious suicidal tendencies. *See* [D.E. 20, pp. 15-17].

improper legal standards were applied if [t]he ALJ's inaccuracies and mischaracterizations taint the record.") (quotation and citation omitted); *Smith v. Astrue*, 2009 WL 3157639, *3-6 (M.D. Fla. Sept. 25, 2009) (finding that the ALJ's misstatements, taken as a whole, indicated that the ALJ failed to properly consider all the evidence).

Indeed, the Eleventh Circuit has expressly disapproved of this sort of self-serving and underinclusive assessment of medical opinion evidence, holding that an ALJ who fails to engage with significant portions of the claimant's medical records in arriving at a finding of inconsistency commits reversible error. *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1106 (11th Cir. 2021) ("Nowhere in [her decision] . . . did the ALJ address [Plaintiff's] panic attacks, racing thoughts, mood swings, outbursts of anger, memory problems, paranoia, or his shutting himself off from others. Instead, the ALJ only listed [Plaintiff's] relatively minor symptoms, while at the same time emphasizing the sections of Dr. Turner's notes that described [Plaintiff] as stable on his medications."). The Commissioner is correct in pointing out that precedents such as *Simon* involved pre-2017 claims that were governed by the treating physician rule, hence, their applicability to the case at hand is limited. But this does not mean that in post-2017 adjudications the ALJ has carte blanche to dismiss medical opinion evidence without a sound basis. *See* 20 C.F.R. § 404.1520c(b) (noting that the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions"). Here, the ALJ found Dr. Carcache's opinion unpersuasive on the grounds that his opinion was inconsistent

18

with (i) record evidence indicating that Plaintiff was attending FIU college where he was getting As and Bs, and (ii) Dr. Carcache's own medical notes observing that Plaintiff "was doing well," that he "demined all depressive symptoms," and that he was "cooperative and engaged." [D.E. 14, p. 28]. As noted above, these premises are seriously flawed, for they rely on substantial misstatements of the factual record, and material omissions of medical reports that belie the ALJ's inconsistency finding. Therefore, the ALJ's explanation for discrediting Dr. Carcache's medical opinion lacks substantive evidence. *See Jimmerson*, 2022 WL 829494 at *8 ("the ALJ's evaluation of the opinion evidence in this case is not supported by substantial evidence because the ALJ made factual misstatements regarding [plaintiff's] functional self-report"); *Humber v. Comm'r of Soc. Sec.*, No. 2:20-CV-00501-JHE, 2021 WL 4409092, at *6 (N.D. Ala. Sept. 27, 2021) (remanding determination where the ALJ omitted from his decision evidence that was inconsistent with his RFC determination).[5]

## IV. CONCLUSION

Substantial evidence does not support the ALJ=s findings as articulated in her unfavorable decision. The ALJ committed harmful error with respect to her assessment of the medial opinion of Dr. Carcache. For the foregoing reasons, the undersigned **RECOMMENDS** that Plaintiff=s motion for summary judgment

---

[5] Because this issue is dispositive, we find that there is no need to address Plaintiff's remaining arguments. *See McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (deciding that there is no need to analyze other issues when case must be reversed due to other dispositive errors).

[D.E. 20] be **GRANTED**, that Defendant=s motion for summary judgment [D.E.24] be **DENIED**, and that the decision of the Commissioner be **REVERSED** and **REMANDED** to the Commissioner for further proceedings.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the Court finds good cause to order the parties to have **seven (7) days** from service of this Report and Recommendation within which to file written objections, if any, with the District Judge. Accordingly, written objections are due by **September 19**, **2022**. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 12th day of September, 2022.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge